PJS:JJB:dlm

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES A. LUCAS,** | **:** | **NO.  1:CV-11-02318** |
| **Plaintiff** | **:** | |
| | **:** | **(Jones, J.)** |
| **v.** | **:** | |
| | **:** | |
| **B.A. BLEDSOE, et al.,** | **:** | |
| **Defendants** | **:** | **Filed Electronically** |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION
## TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

**PETER J. SMITH**
**United States Attorney**


**s/ Justin Blewitt**
**JUSTIN BLEWITT**
**Assistant U.S. Attorney**
**PA jb01710**
**DAWN L. MAYKO**
**Paralegal Specialist**
**U.S. Attorney's Office**
**228 Walnut Street, 2nd Floor**
**P.O. Box 11754**
**Harrisburg, PA 17108**
**Phone: 717-221-4482**
**Dated: August 10, 2012          Fax: 717-221-2246**

# TABLE OF CONTENTS

I.      Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    Questions Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.     Legal Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.    Defendants DeLeon, Brenneman, and Hemphill are commissioned
              officers in the United States Public Health Service and are immune
              from suit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.    Because Defendants Bledsoe and Brown are being sued in their
              official capacities, they are entitled to sovereign immunity. . . . . . . 16

        C.    Lucas' claims are barred by the Favorable Termination Rule. . . . . . 17

        D.    Defendants Bledsoe and Brown lack personal involvement in the
              alleged wrongs and respondeat superior cannot form the basis of a
              Bivens Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        E.    Defendants did not violate Lucas' Eighth Amendment rights. . . . . . 20

        F.    Defendants are entitled to Qualified Immunity as Lucas has failed to
              plead sufficient facts to establish their involvement in any alleged
              violations of his constitutional rights. . . . . . . . . . . . . . . . . . . . . . . . . 23

V.   Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc.,
 477 U.S. 242 (1986)........................................................................ 14

Arizonans For Official English v. Arizona,
 520 U.S. 43 (1997)........................................................................ 14

Ashcroft v. Iqbal,
 129 S. Ct. 1937 (2009)........................................................... 19,25

Bivens v. Six Unnamed Agents of the Federal  Bureau of Narcotics,
 403 U.S. 388 (U.S. 1971).......................................................... 2-12

Clemente v. Allen,
 120 F.3d 703 (7th Cir. 1997). ................................................. 17-18

Breyer v. Meisenser, I.N.S.,
 23 F. Supp. 2d 540 (E.D. Pa 1998). ............................................. 25

Castaneda,
 130 S. Ct. 1845 (2010)................................................................. 15

Celotex Corp. v. Catrett,
 477 U.S. 317 (1986)..................................................................... 14

Colburn v. Upper Darby Township,
 838 F.2d 663 (3d.  Cir.1988). ....................................................... 18

Curley v. Klem,
 499 F.3d 199 (3d Cir. 2007). ....................................................... 24

Durmer v. O'Carroll, ,
 991 F.2d 64 (3d Cir. 1993). ......................................................... 20

Edwards v. Balisok,
    520 U.S. 641 (1997)..................................................................... 17

Estelle v. Gamble,
    429 U.S. 97 (1976.)................................................................... 20,23

FDIC v. Meyer,
    510 U.S. 471 (1994)..................................................................... 16

Farmer v. Brennan,
    511 U.S. 825 (1994)..................................................................... 22

Flanagan v. Shively,
    510 U.S. 829, 114 S. Ct. 95 (1993)............................................... 19

Forbes v. Reno,
    893 F. Supp. 476 (W.D. Pa. 1995)................................................ 16

Gould Electrics Inc. v. United States,
    220 F.3d 169 (3d Cir. 2000). ....................................................... 13

Grant v. City of Pittsburgh,
    98 F.3d 116 (3d Cir. 1996). ......................................................... 25

Gruenke v. Seip,
    225 F.3d 290 (3d Cir. 2000). ....................................................... 25

Harlow v. Fitzgerald,
    457 U.S. 800 (1982).................................................................. 24,26

Heck v. Humphrey,
    512 U.S. 477 (1994)..................................................................... 17

Hunter v. Bryan,
    502 U.S. 224 (1991)................................................................... 23-24

Inmates of Allegheny County Jail v. Pierce,
    612 F.2d 754 (3d Cir. 1979). ....................................................... 22

Johnson v. Frankell,
        520 U.S. 911, 117 S. Ct. 1800 (1997)............................................................ 26


Kelly v. Borough of Carlisle,
        622 F.3d 248 (3d Cir. 2010). ........................................................................ 24

Kentucky v. Graham,
        473 U.S. 159 (1985)....................................................................................... 16

Key v. McKinney,
        176 F.3d 1083 (8th Cir. 1999). ...................................................................... 26

Leamer v. Fauver,
        288 F.3d 532 (3d Cir. 2002). ......................................................................... 18

Loeffler v. Frank,
        486 U.S. 549 (1988)........................................................................................ 16

Mitchell v. Forsyth,
        472 U.S. 511 (1985)........................................................................................ 23

Packard v. Provident National Bank,
        994 F.2d 1039 (3d Cir. 1993). ....................................................................... 13

Pearson v. Callahan,
        129 S. Ct. 808 (2009)............................................................................... 23-25

Rouse v. Plantier,
        182 F.3d 192 (3d Cir. 1999). ......................................................................... 23

Russoli v. Salisbury Township,
        126 F. Supp. 2d 821 (E.D. Pa 2000)............................................................. 25

Saucier v. Katz,
        533 U.S. 194 (2001)........................................................................................ 24

Spruill v. Gillis,
>    372 F.3d 218 (3d Cir. 2004). .................................................................. 21-22

Steel City Co. v. Citizens For Better Environment,
>    523 U.S. 83 (1998). ...................................................................................... 13

Sutton v. Rasheed,
>    323 F.3d 236 (3d Cir.2003). ......................................................................... 19

Torres v. Fauver,
>    292 F.3d 141 (3d Cir. 2002). ........................................................................ 17

United States v. Testan,
>    424 U.S. 392 (1976). ..................................................................................... 16

White v. Napoleon,
>    897 F.2d 103 (3d Cir. 1990). ................................................................... 22-23

Williamson v. United States Department of Agricultural,
>    815 F.2d 368 (5th Cir. 1987). ....................................................................... 16

## FEDERAL STATUTES

42 U.S.C. § 1983. .......................................................................................... 17

42 U.S.C. § 233(a). ....................................................................................... 15

28 U.S.C. § 2241. .......................................................................................... 18

Fed.R.Civ.P. 56. ............................................................................................ 14

PJS:JJB:dlm

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES A. LUCAS,** | : | **NO. 1:CV-11-02318** |
| **Plaintiff** | : | |
| | : | **(Jones, J.)** |
| **v.** | : | |
| | : | |
| **B.A. BLEDSOE, et al.,** | : | |
| **Defendants** | : | **Filed Electronically** |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION
## TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants B.A. Bledsoe; E. Stuart; T. Hooper; W. McFadden; A. Sassaman; C. Scampone; P. Carrasquillo; T.J. Johnson; M. Saylor; J. Seeba; C. Mattingly; A. Galletta; G. Haney; R. Drick; B. Tanner; E. Kilpatrick; B. Wert; Z. Edinger; E. Good; E. Klinefelter; M. Wagner; C. Webb; S. Prutzman; S. Hicks; K. Whittaker; J. Lesho; R. Loss; S. Booth; G. Wise; M. Reeves; F. Alama; H. Birdsall; S. Figlo; R. Admire; M. Jones; R. Packer; T. Brouse; S. Brown; D. DeLeon; W. Brenneman; B. Walls; B. Prince; G. George; L. Potter; M. Peoria; J. Hemphill; and I. Navarro, hereby file this brief in support of Defendants' motion

to dismiss or, in the alternative, for summary judgment.

## I.  Procedural History

Plaintiff, James A. Lucas, is an inmate incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania (USP Lewisburg), filed this <u>Bivens</u>[1] action alleging his belly chain was too tight, he did not receive proper medical attention, he was unable to perform basic hygiene, and eat his meals properly when he was placed in restraints.  Doc. 1.

Lucas has filed a rambling complaint containing 371 allegations and naming 51 Defendants (including 6 Doe Defendants).  Essentially, these allegations can be reduced to complaints concerning three periods of time during which Lucas was in ambulatory restraints at USP Lewisburg in the aftermath of use of force incidents. He also claims he sustained a wrist injury while in the ambulatory restraints.

Defendants filed a motion to dismiss, or in the alternative, for summary judgment on July 11, 2012.  Doc. 30.  Following an enlargement of time, Defendants file this instant brief in support of that motion in accordance with M.D. Pa. Local Rule 7.5.

---

[1] <u>Bivens v. Six Unnamed Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (U.S. 1971).

## II.  Factual Background

A.   <u>Convictions and Penal History</u>

Lucas was convicted in the United States District Court for the Southern District of Alabama for Carjacking, sentenced to 46 months with 3 year term of supervision and Possession of a Firearm During a Crime of Violence, sentenced to 84 months with 5 year term of supervision.  <u>See</u> Declaration of L. Cunningham (Ex. 1) ¶ 3, Sentence Monitoring Computation Data.  Additionally, Lucas was convicted in the United States District Court for the Middle District of Pennsylvania for Possession of a Prohibited Object (shank) by an Inmate while housed at USP-L, for which he was sentenced to an additional 21 months.  <u>Id.</u>

Prior to Lucas' arrival at USP Lewisburg's Special Management Unit (SMU), Lucas had incurred in excess of 65 disciplinary incident reports at other BOP facilities.  <u>Id.</u> ¶ 2, Chronological Inmate Disciplinary Record.  The prohibited acts represented by these incident reports included:  Possession of Dangerous Weapons, Assault with Serious Injury, Interfering with Security Devices, Threatening, Fighting, and Destroying Property, and many reports of Engaging in Sexual Acts, among others.  <u>Id.</u>

Since his arrival at USP Lewisburg, Lucas has received more than 60 additional disciplinary incident reports:  for Possessing Dangerous Weapons, Mail

3

Abuse, Sexual Assault without Force, Disruptive Conduct (High), Fighting,

Assault, and Interfering with Security Devices, and many for Engaging in Sexual

Acts, among others.  Id.

Lucas' present complaint essentially relates to three different periods of

time when he was placed in restraints[2] after use of force incidents:

B.     Disciplinary Incident Report February 25, 2010

On February 25, 2010, Lucas refused to submit to a visual search.[3]  Ex. 1,

¶ 4, Report of Incident/After Action. A use of force team, consisting of Defendants

Wert, Good, Kilpatrick, Klinefelter, Stuart, Edinger, Reeves, and Hicks was

assembled to facilitate the search.  Id. ¶ 4 Report of Incident/After Action for

February 25, 2010 incident.

Lucas admits that he refused to walk on his own after the visual search, and

required staff to carry him, in restraints, to the Health Services Unit, for medical

evaluation.  Doc. 1 at 39-40.

---

[2] At all times relevant to the allegations concerning restraints in this
complaint, Lucas admits he was in "ambulatory" restraints, which are specifically
designed to allow inmates to take care of their own basic needs such as feeding
themselves and using the toilet, personal hygiene, and sleeping.  Cunningham
Decl. (Ex. 1) ¶ 7, Program Statement 5566.06, Use of Force and Application of
Restraints, p. 11, Chapter. 9.

[3] It should be noted that Lucas admits he refused to the search for no
apparent reason.  Id.

For this incident, Lucas was in restraints for less than 24 hours, from February 25, 2010, at approximately 2:35pm to February 26, 2010, at 9:45 am. Ex. 1, ¶ 4 Report of Incident/After Action for February 25, 2010 incident.

Lucas received a disciplinary incident report for "Possession of a Weapon." Id. On May 25, 2010, he was found to have committed the prohibited act for which he was charged and was sanctioned by the DHO to a loss of 41 days Good Conduct Time, 60 days disciplinary Segregation, and 210 days loss of both commissary and visiting privileges.  Id.

1.    Medical Checks for February 25, 2010 Incident

Medical staff believed that Lucas was intentionally manipulating the restraints to injure himself and/or give the appearance that they were too tight. See Declaration of D. DeLeon (Ex. 2) ¶ 4, Medical Records at 1.  Health Services staff documented that Lucas was "continuously forcing hand restraints up his forearm to where they become restrictive.  When moved down to near the wrists, restraints were not restrictive and circulation checks were WNL."  Id.

Lucas refused the next two medical checks by Defendant Brenneman.  His refusals were properly documented both in his medical record and with completed "Medical Treatment Refusal Form(s)."  Id. ¶ 4, Medical Records at 3-6.

Lucas was subsequently medically checked by Defendant Brenneman just

5

after midnight on February 26, 2010, and by Defendant Prince at 6:05 am.  Id. ¶ 4, Medical Records at 10-15.  Both medical providers noted Lucas had no medical complaints.  Id.

A few hours later, Lucas was checked by Defendant PA Peoria, who noted Lucas complained of his "belly chain being too tight" and stated that "according to policy, he should not be in restraints."  Id. ¶ 4, Medical Records at 10-15.  Peoria noted Lucas appeared not to be in distress.  Id.  He also noted no swelling at Lucas' wrist, hands, fingers, ankles, feet or toes.  Id.

Lucas was released from restraints at 9:45am, on February 26, 2010.  Id. ¶ 4, Medical Records at 16-20.

Notably, the following day, February 27, 2010, Lucas was seen by Defendant Potter while on rounds in the Special Housing Unit.  Potter noted in Lucas' medical record, "I/M showed me his wrists during the AM pill line.  I/M has three minor scratches on the anterior of both wrists.  Stated they are from the restraints he was wearing.  All the scratches are less than 1 cm and in the later stages of healing and not consistent with abrasions from extended wearing of restraints."  Id. ¶ 4, Medical Records at 21-22.

C.    Disciplinary Incident Report August 2, 2010

While staff were trying to remove the restraints that Lucas was wearing, he

assaulted a staff member by pulling the arm of the escorting officer through the

wicket (food slot) of his cell door.   Cunningham Decl. ¶ 5, Report of

Incident/After Action Report August 2, 2010.

After this incident, Lucas remained in restraints for approximately 24 hours,

from August 2, 2010, at approximately 12:35 pm to August 3, 2010, at 12:00 pm.

Id.

1.    Medical Checks for August 2, 2010 Incident

On August 2, 2010, Lucas was medically evaluated immediately after he

was placed in restraints by Defendant Potter (EMT) who documented, "Verbalized

no medical complaints.  No signs of trauma noted.  I/M placed into ambulatory

restraints.  Good distal pulses and CAP refill in all extremities.  After wrist

restraints and martin chain were applied, I/M forced the wrist restraints up his

forearms in an attempt to get the restraints loosened.  I/M will be counseled during

the next check to keep restraints on wrists."  Declaration of L. Potter (Ex. 3) ¶ 4,

Medical Record at 1-3.

Once again, medical staff clearly documented their opinion that Lucas was

intentionally pushing his restraints high on his forearms in an attempt to make the

restraints to appear too tight, possibly cause injury to himself, in an effort to

manipulate staff to loosen them.  Id. ¶ 5, Medical Record at 1-3.

On August 2, 2010, at 18:10, Lucas was evaluated by Defendant Brenneman (RN) who noted Lucas voiced no complaints, and by Defendant Potter at 20:00 with no problems noted. Id. ¶ 6, Medical Record at 4-8.

Lucas was seen the following morning at 08:00 by Defendant Walls (EMT) who noted Lucas complained of tingling in his right middle fingers. Defendant Walls noted the handcuffs were moved from Lucas' forearms back down to the proper position on his wrists. No obvious injuries were noted. Id. ¶ 7, Medical Record at 9-11.

Lucas was taken out of restraints at noon. Id. ¶ 8, Medical Record at 12.

On August 4, 2010, Lucas was seen by PA Alama for complaints of pain and tenderness in both wrists, but "more on the right radial aspect." Declaration of K. Pigos (Ex. 4) ¶ 4 Medical Record at 1-4. Lucas reported being in ambulatory restraints and claimed he felt a tingling sensation on the right thumb, index finger and middle finger. Id. PA Alama noted Lucas was able to pronate and supinate, flex and extend his wrist without any problem. Id. A wrist x-ray was ordered and Lucas was given Ibruprofen for his complaint of pain. Id.

Lucas received x-rays of both wrists on August 20, 2010, and the x-rays were negative. Id. ¶ 5, Medical Record at 5-10.

On September 29, 2010, Lucas was referred to an orthopedic consultation

for complaints of tingling and numbness of both thumbs and index fingers.  Id. ¶ 6, Medical Record at 11-12.

On October 10, 2010, as medical staff attempted to deliver Lucas' medication, he took his medication and then masturbated in front of female staff. Id. ¶ 7, Medical Record at 13-14.

Lucas had an EMG (Electromyogram) study performed by an orthopedic consultant on December 14, 2010.  Id. ¶ 8, Medical Record at 15-20.  Notably, the orthopedic consultant documented that Lucas reported that his symptoms were noted in September 2010 and "gradually progressed."  Id.  Lucas did not report his symptoms were related to February or August, the time periods subject to this point of the complaint.  Id.

The orthopedic consultant noted the majority of testing revealed results within normal limits, noting only that the plaintiff manifested "right superficial radial sensory neuropathy of mild-modest degree" and "right median mononeuropathy at or distal to wrist (carpel tunnel syndrome) of mild degree. Id. ¶ 9, Medical Record at 15-20.

These mild symptoms are not inconsistent with an inmate manipulating restraints by pushing them up on his forearms as documented above.  Id. ¶ 9, Medical Record at 15-20.

9

On December 13, 2011, Lucas had a follow-up EMG and Nerve conduction study. Id. ¶ 15, Medical Record at 48-50. This study was done approximately one year after the prior study referenced above. Id. The Orthopedic Consultant concluded, "The patient did have right upper extremity testing EMG/NCS testing 12/14/10 demonstrating superficial radial sensory neuropathy. Id. Compared to prior testing, there has been minimal improvement in radial sensory amplitude. Id. Previous testing had also shown right carpal tunnel syndrome of mild degree that has resolved in the interim. Id. There are no findings for polyneuropathy or evidence of other sites of mononeuropathy involving upper extremities. Id. There are no EMG findings for myopathy or for radiculopathy." Id.

D.     Disciplinary Incident January 21, 2011

Lucas and his cellmate refused to return their food trays to staff and were observed to have unknown liquid in their possession, suspected to be urine, or urine mixed with feces. Cunningham Declaration (Ex. 1) ¶ 6, Report of Incident/After Action Report January 21, 2011. Lucas threatened to throw the liquid on staff, saying, "Oh, we're going to shit you down good." Id.

As a result of this incident, Lucas received a disciplinary incident report for Disruptive Conduct- High (Code 299). Id. At a DHO hearing on August 11, 2011, the DHO found he had committed the prohibited act for which he was

charged.  Id.  The DHO sanctioned Lucas to loss of 27 days Good Conduct Time, and 30 days disciplinary segregation.  Id.

For this incident, Lucas was in restraints for less than 48 hours, from January 21, 2011, at approximately 7:05 pm to January 23, 2010, at 2:00 am.  Id.

1. Medical Checks for January 21, 2011 Incident

With regard to specific medical monitoring, Lucas was evaluated immediately after the use of force and application of restraints.  Pigos Decl. (Ex. 1) ¶ 11, Medical Record at 21-23.  Medical staff noted Lucas stated he had "no injury."  Id.

Likewise, Lucas was medically evaluated six times the following day by three different medical provider defendants: Walls, George and Brenneman.  Id. ¶ 12, Medical Record at 24-31.  At each check, the health services providers documented that Lucas made no complaints, pulse and respiration were evaluated and documented, and no injuries were noted.  Id.

Lucas was medically evaluated on January 23, 2011.  Id. ¶ 13, Medical Record at 42-44.  He voiced no complaints and no injuries were noted.  Id.  Lucas was released from restraints shortly thereafter.  Id.

On January 25, 2011, Defendant Hemphill documented that Lucas sent a "copout" (Inmate Request to Staff) stating:  "Inmate is requesting a Medical

11

Assessment to record the injuries sustained from being unlawfully in hard ambulatory restraints that were arbitrarily too tight for 31 hours.  Id. ¶ 14, Medical Record at 45-47.  The injuries are:  lower back pain (from too tight belly chain), swelling and inflammation and cuff bruises of the lower forearm and wrists." Hemphill noted Lucas claimed he had tingling and pain in his right wrist, "admits the swelling is decreased today in comparison to yesterday," and rated his pain as 6-6 on a scale of 10.  Id.  Defendant Hemphill noted Lucas had access to pain medication.  Id.  He also noted Lucas has "FROM" (full range of motion" of bilateral wrists with sensory perception across all extremity fields.  Id.  Hemphill discharged Lucas to his housing unit with no restrictions.  Id.

### III.  Questions Presented

A.   Should this Court dismiss Lucas' Complaint because Defendants DeLeon, Brenneman, and Hemphill are commissioned officers in the United States Public Health Service and are immune from suit?

B.   Should this Court dismiss Lucas' Complaint because Defendants Bledsoe and Brown are being sued in their official capacities and are entitled to sovereign immunity?

C.   Should this Court dismiss Lucas' Complaint because Lucas' claims are barred by the favorable termination rule?

D.   Should this Court dismiss Plaintiff's Complaint because Defendants Bledsoe and Brown lack personal involvement and respondeat superior cannot form the basis of a Bivens claim?

E.      Should this Court grant summary judgment as Defendants did not
        violate Lucas' Eighth Amendment rights?

F.      Should this Court grant summary judgment as Defendants are entitled
        to Qualified Immunity?


Suggested Answers: Affirmative

## IV.  Legal Standards

**A.      Legal standard.**

When ruling on a Rule 12(b)(1) motion a court may treat the motion as a

factual challenge, which does not require a court to accept the allegations of a

complaint as true.  Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir.

2000).  The court may weigh any evidence to satisfy itself that it does or does not

have subject matter jurisdiction, but it cannot consider the merits of an action until

it is satisfied that the dispute falls within the class of cases or controversies to

which Article III, Section 2 of the United States Constitution has extended the

judicial power of the United States.  Steel City Co. v. Citizens For Better Env't,

523 U.S. 83, 102 (1998).

A plaintiff bears the burden of establishing that the district court has subject

matter jurisdiction over the claims raised in the complaint.  See Packard v.

Provident Nat'l Bank, 994 F. 2d 1039, 1045 (3d Cir. 1993).  A court that is

without proper jurisdiction cannot proceed at all and must dismiss the suit.  See
Arizonans For Official English v. Arizona, 520 U.S. 43 (1997).

**B.    Legal Standard**.

The award of summary judgment to a party is appropriate when supporting
materials, such as affidavits and other documentation, show there are no material
issues of fact to be resolved and the moving party is entitled to judgment as a matter
of law.  Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  In Celotex,
the Court held that "Rule 56(e) ... requires that the non-moving party go beyond the
pleadings by [his] own affidavits, or by 'depositions, answers to interrogatories and
admissions on file,' [and] designate 'specific facts showing that there is a genuine
issue for trial.'"  Id. at 324 (quoting Fed.R.Civ. 56(e)).  Additionally, an opposing
party must adduce more than a mere scintilla of evidence in its favor and cannot
simply reassert factually unsupported allegations contained in its pleadings.  Id. at
325; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  For the purpose of
summary judgment, then, the Court should consider only those material facts about
which there is no genuine dispute.

**A.    Defendants DeLeon, Brenneman, and Hemphill are commissioned
officers in the United States Public Health Service and are immune
from suit.**

The Public Health Service Act provides that an action against the United

States under the Federal Tort Claims Act (FTCA) is the exclusive remedy "for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment." See 42 U.S.C. § 233(a).

A recent Supreme Court Decision has determined that Bivens actions cannot be maintained against PHS employees for harms arising out of constitutional violations committed while acting within the scope of their employment. Hui et al. v. Castaneda, as Personal Representative of the estate of Castaneda, 130 S.Ct. 1845 (2010).

Defendants Deleon and Brenneman are both Registered Nurses and commissioned as Lieutenant Commanders in the U.S. Public Health Service, Defendant Hemphill is a Physician Assistant and is commissioned as a Commander in the U.S. Public Health Service.  Therefore, these three defendants are immune from allegations related to the provision of medical care in this Bivens suit.  Cunningham Decl. (Ex. 1) ¶ 9.

**B.     Because Defendants Bledsoe and Brown are being sued in their official capacities, they are entitled to sovereign immunity.**

In this case, Lucas states he is suing Defendant Bledsoe and Defendant Brown in their official capacities.  Therefore, this Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) over Lucas' Complaint.

A suit against a federal employee in his or her official capacity is essentially a suit against the United States.  Kentucky v. Graham, 473 U.S. 159 (1985).  The doctrine of sovereign immunity is "inherent in our constitutional structure" and renders the United States of America, its departments, and officials immune from suit except where the United States has consented to be sued.  Williamson v. United States Dep't of Agric., 815 F.2d 368, 373 (5th Cir. 1987); see FDIC v. Meyer, 510 U.S. 471, 486 (1994) (citing Loeffler v. Frank, 486 U.S. 549, 554 (1988)).

The doctrine of sovereign immunity extends to individual officers sued in their official capacity because an official capacity suit is only another way of pleading an action against an entity of which an officer is an agent.  Forbes v. Reno, 893 F. Supp. 476 (W.D. Pa. 1995).  Thus, absent an express congressional waiver of sovereign immunity, the United States cannot be sued.  United States v. Testan, 424 U.S. 392, 399 (1976).  Accordingly, this Court lacks subject matter jurisdiction over any alleged constitutional claim against Defendant Bledsoe and Defendant Brown in their official

capacities and such claims should be dismissed pursuant to Federal Rule of Civil

Procedure 12(b)(1) for lack of jurisdiction.

## C.    Lucas' claims are barred by the Favorable Termination Rule.

To the extent that Lucas is challenging any actions related to his inmate

disciplinary proceeding without first challenging it through proper channels, and

to the extent that he seeks to overturn his DHO hearing, those claims are barred by

the Favorable Termination Rule.  In Heck v. Humphrey, 512 U.S. 477 (1994), and

later in Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court ruled that a

plaintiff filing suit under 42 U.S.C. § 1983 cannot seek damages for harm caused

by actions the unlawfulness of which would necessarily render the fact or length

of his confinement invalid, unless he can prove that the conviction, sentence, or

prison disciplinary sanction that resulted from those actions has been reversed,

invalidated, or called into question by a grant of federal habeas corpus relief (in

other words, terminated favorably to the plaintiff).  See Heck, 512 U.S. at 486-87;

Edwards, 520 U.S. at 646-48; see also Torres v. Fauver, 292 F.3d 141, 143,

145-50 (3d Cir. 2002) (stating that the favorable-termination rule applies where

the fact or duration of an inmate's confinement is at issue).  This rule also applies

in civil rights actions brought pursuant to Bivens.  Clemente v. Allen, 120 F.3d

703, 705 (7th Cir. 1997).

As a result of Lucas' behavior, he received three separate incident reports: 1) February 25, 2010, Possession of Weapon; 2) August 2, 2010, Assaulting any Person, Threatening Bodily Harm, Refusing to Obey an Order of Any Staff Member; and 3) January 21, 2011, Disruptive Conduct.  Cunningham Decl. (Ex. 1) ¶¶ 4-6.  Lucas was sanctioned, among other things, to loss of good-time credits for each incident.  Id.

Lucas presents no claim or evidence that the disciplinary sanctions he received as a result of his incident reports have been called into question through the prosecution of, for example, a 28 U.S.C. § 2241 petition.  To the extent any favorable ruling regarding Lucas' claims, if rendered, would imply that the loss of good-time credit as a result of any related incident report was invalid, those claims are not cognizable at this time.  Leamer v. Fauver, 288 F.3d 532, 542-43 (3d Cir. 2002).

Accordingly, this Court should grant summary judgment to Defendants.

**D.   Defendants Bledsoe and Brown lack personal involvement in the alleged wrongs and respondeat superior cannot form the basis of a <u>Bivens</u> Claim.**

The plaintiff in a <u>Bivens</u> action must allege specific actions committed by each defendant which violated his constitutional rights in order to state a claim against the defendant.  Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3d.

18

Cir.1988); <u>Flanagan v. Shively</u>, 510 U.S. 829, 114 S.Ct. 95 (1993).  Personal

involvement or some affirmative action on the part of a defendant is necessary

before he or she may be found liable for a civil rights violation.  <u>Sutton v.</u>

<u>Rasheed</u>, 323 F.3d 236, 249 (3d Cir.2003).

The United States Supreme Court recently observed that supervisory

liability cannot form the basis of a <u>Bivens</u> claim, stating as follows, "Because

vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead

that each Government-official defendant, through the official's own individual

actions, has violated the Constitution."  <u>Ashcroft v. Iqbal</u>, — U.S. —, 129 S.Ct.

1937, 1948 (2009).  The factors necessary to establish a <u>Bivens</u> violation will vary

with the constitutional provision at issue.  <u>Id.</u>

Defendant Bledsoe, former Warden of USP Lewisburg and Defendant

Brown, Health Services Administrator , appear to be named by virtue of their

positions.  Lucas has offered no support for his bald accusations that Bledsoe or

Brown had any personal involvement in any of the allegations of the Complaint

concerning the use of force.  Accordingly, this Court should dismiss Defendants

Bledsoe and Brown from this suit. <u>Iqbal</u>, 129 S. Ct. at 1948.

**E.     Defendants did not violate Lucas' Eighth Amendment rights.**

Lucas' claims that his restraints were not properly applied and that staff

were deliberately indifferent to his medical needs are meritless.

The Eighth Amendment proscription against cruel and unusual punishment

requires that prison officials provide inmates with adequate medical care.  Estelle

v. Gamble, 429 U.S. 97, 103-104 (1976.)   In order to set forth a cognizable claim

for a violation of his right to adequate medical care, in individual must allege:  1) a

serious medical need; and 2) behavior on the part of the prison officials that

constitutes deliberate indifference to that need.  Id. at 106.  The medical records

relevant to Lucas' placement in restraints fail to indicate he had any serious

medical need develop during this time.

"There is a necessary corollary to this principle, limiting the reach of the

Eight Amendment…   In a case such as this, where a plaintiff's complaint reflects

that an inmate received some level of on-going medical care, it is also well

established that non-medical correctional staff many not be "considered

deliberately indifferent" simply because they failed to respond directly to the

medical complaints of a prisoner already being treated by a prison doctor."  Green

v. Bledsoe, 1:11-CV-00481, Report and Recommendation filed March 27, 2012,

adopted in full by Memorandum dated June 11, 2012 (citing, Durmer v. O'Carroll,

991 F.2d 64, 69 (3d Cir. 1993)).  The Third Circuit has added:

> "If a prisoner if under the care of medical experts…, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.   This follows naturally from the division of labor within a prison.  Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.  Holding a non-medical prison official liable in a case where a prison is under a physician's care would strain this division of labor.   Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners for fear of vicarious liability.   Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non medical prison official….will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."

Spruill v. Gillis, 372 F. 3d 218, 236 (3d Cir. 2004).

In the case, Lucas alleges that restraints were placed on him too tightly by correctional services (non-medical staff) and further, that he was not provided adequate medical care for injuries he allegedly received.

A review of medical records, however, indicates Lucas was seen by medical staff twice per shift while he was in ambulatory restraints during the time period relevant to this complaint.  Ex. 1, ¶¶ 4-6, Report of Incident/After Action. Medical staff not only documented that Lucas did not have injuries due to his restraints, they also documented on several occasions their observations that Lucas

was intentionally manipulating the restraints up on his forearms to an improper position, presumably with the goal of inducing self-injury and attempting to misleadingly portray the restraints as being too tight.  Id.

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.

Even assuming that Lucas did have a serious medical need (which we do not concede), deliberate indifference is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference, and "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F. 2d 103, 110 (3d Cir. 1990).

It is axiomatic that "Courts will disavow any attempt to second guess the propriety or adequacy of a particular course of treatment...[which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact been made."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d. 754, 762 (3d Cir. 1979).

Even if a doctor's judgment concerning the proper course of a prisoner's

treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

Deliberate indifference requires "conduct that includes recklessness or a conscious disregard of a serious risk." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference exists where a prison official or medical staff member: 1) knows of the prisoner's need for treatment but intentionally refuses to provide it; 2) delays necessary medical treatment for non-medical reasons; or 3) prevents a prisoner from receiving needed or recommended medical treatment.  Id.

In this case, there is no indication that any of the above has occurred.   Thus, Lucas has failed to plead an Eighth Amendment violation and summary judgment should be granted to Defendants.

**F.      Defendants are entitled to Qualified Immunity as Lucas has failed to plead sufficient facts to establish their involvement in any alleged violations of his constitutional rights.**

Qualified immunity provides not merely a "defense to liability," but rather "immunity from suit." See Hunter v. Bryan, 502 U.S. 224, 227 (1991) (quoting Mitchell v. Forsyth, 472 U.S. 511, 536 (1985)).  Therefore, it is important to resolve immunity issues at the earliest possible stages of litigation.  See Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Hunter, 502 U.S. at 227).

Certain officials performing "discretionary functions" are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right of which a reasonable person would have known." Pearson v. Callahan, 555 U.S.223, 129 S. Ct. at 815(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  If such an official reasonably believes his conduct to be unlawful, he is protected by qualified immunity, which affords "ample room for mistaken judgments by protecting all by the plainly incompetent or those who knowingly violate the law." Kelly v. Borough of Carlisle, 622 F.3d 248, 254 (3d Cir. 2010) (quoting Hunter, 502 U.S. at 229).

Analysis of qualified immunity is two pronged.  The first prong evaluates whether a defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201-02(2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F. 3d 199, 206 (3d Cir. 2007).

If a plaintiff fails to put forth evidence that a defendant committed a constitutional violation, the court must dismiss the claim.  Saucier, 533 U.S. at 201.  If the plaintiff provides evidence that the defendant committed a constitutional violation, the second prong of the inquiry looks to whether the right in question was  "clearly established" at the time the defendant acted.  See Pearson, 129 S. Ct. at 815-16; Saucier, 533 US. 201-02.  A right is "clearly

24

established" if a reasonable actor under the same circumstances would have known that his or her conduct violated a constitutional right.  See Pearson, 129 S.Ct. at 815-16.  The court may conduct this two pronged analysis in any order. Pearson, 129 S. Ct. at 820.

If immunity is raised at the summary judgment stage, and if the court chooses to address the plaintiff's showing of a constitutional violation (first prong as set forth above), then the inquiry into the alleged violations requires an analysis of the merits.  See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 838-41 (E.D. Pa 2000); see also Grant v. City of Pittsburgh, 98 F. 3d 116, 122 (3d Cir. 1996).

Further, in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), the Supreme Court determined, "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  When "[p]laintiff's pleading are not specific as the conduct of individual defendants, [t]hey are . . . clearly insufficient to overcome defendant's assertion of qualified immunity, under which federal officials performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known.'"  Breyer v. Meisenser, I.N.S., 23 F. Supp.2d 540, 544 n. 4

25

(E.D. Pa 1998) (citing <u>Johnson v. Frankell</u>, 520 U.S. 911, 117 S. Ct. 1800, 1803 (1997) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982))).

In this case, Lucas merely alleges that his belly chain was too tight and he did not receive proper medical attention when he was placed in restraints.

Lucas' claims are based on three separate incidents he was placed in ambulatory restraints:  two for less than 24 hours, and one for less than 48 hours. As outlined above, he was medically assessed numerous times, in accordance with BOP policy during those spans of time.

Several courts have concluded that a relatively short periods in restraints does not rise to the level of a constitutional violation.  <u>Key v. McKinney</u>, 176 F.3d 1083, 1086 (8th Cir. 1999)(no Eighth Amendment violation where inmate was restrained for 24 hours); <u>Holley v. Johnson</u>, 2010 WL 2640328 (W.D. Va, June 30, 2010)(prisoner in ambulatory restraints for 48 hours); <u>Moore v. Miller</u>, 2009 WL 113258 (W.D. Va., Jan 15, 2009)(prisoner in ambulatory restraints for 26 hours); <u>Saleh v. Ray</u>, 2003 WL 23484639, fn. 6 (D. Kansas, 2003)(24 hours in ambulatory restraints not an Eighth Amendment violation.)

Further, as stated above, Lucas received frequent medical monitoring which did not reveal the restraints were causing his any harm.

Because Lucas failed to allege conduct which rises to the level of a constitutional violation against any of the Defendants, this Court should dismiss the Complaint or grant summary judgment to Defendants.

## V.   Conclusion

For the reasons noted above, Defendants respectfully request that the Court grant their motion to dismiss or, in the alternative, for summary judgment.

Respectfully submitted,

PETER J. SMITH
United States Attorney


s/ Justin Blewitt
JUSTIN BLEWITT
Assistant U.S. Attorney
PA jb01710
DAWN L. MAYKO
Paralegal Specialist
U.S. Attorney's Office
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA 17108
Phone: 717-221-4482
Dated: August 10, 2012      Fax: 717-221-2246

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES A. LUCAS,** | : | **NO.  1:CV-11-02318** |
| **Plaintiff** | : | |
| | : | **(Jones, J.)** |
| **v.** | : | |
| | : | |
| **B.A. BLEDSOE, et al.,** | : | |
| **Defendants** | : | **Filed Electronically** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That on August 10, 2012, she served a copy of the attached

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION
## TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE:
James A. Lucas
Reg. No. 08301-003
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

/s Dawn L. Mayko
Dawn L. Mayko
Paralegal Specialist